**NATIONAL SILVER CO. v. NICHOLAS.**

No. 14288.

United States Court of Appeals
Fifth Circuit.

June 12, 1953.

Claude Pepper, Miami, Fla., Pepper, Lefevre, Orr & Faircloth, Miami, Fla., for appellant.

Louis M. Jepeway, Miami, Fla., William J. McLeod, Jr., Coral Gables, Fla., for appellee.

Before BORAH, RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

Appellant prosecutes this appeal from its unsuccessful effort to re-claim certain silverware in possession of the receiver of Belfast Imports, Inc., debtor in a petition for an arrangement of affairs under provisions of Chapter XI of the Bankruptcy Act.[1] Begun by a petition which, while not clear in all respects, apparently intends to charge that Belfast, the debtor in petition for arrangement, "acting through Albert Aronesty for himself and Samuel Sutton", purchased the described goods and obtained possession of them through the fraud of Samuel Sutton and Albert Aronesty, which consisted of a representation that a new company had been formed and was solvent and able to pay its debts as they matured, whereas they knew that no such new company was being formed "and that Belfast Imports, Inc., which is in possession of petitioner's merchandise were not able to pay their (sic) debts as they matured." Petitioner, without knowledge to the contrary, relied upon such representation. Therefore, having learned that "there was no corporation or new company then organized as aforesaid and that the debtor had misrepresented the facts and deceived this petitioner for the purpose of obtaining such merchandise * * * petitioner desires to rescind the sales because of fraud perpetrated upon the petitioner." Upon the first hearing before the referee, the oral testimony presented much confusion and contra-

diction, and, indeed, vagueness, concerning the inducement for the agreement of sales and delivery of the merchandise. Some aspects of the matter, however, clearly appeared. Among the latter were that Belfast had no credit with the National Silver Company on April 24, 1951. On or about that day, Philip J. Bernstein, the Silver Company's vice-president, approved the sale of a portion of the merchandise in question to Albert Aronesty and Sam Sutton. He "intended to sell the merchandise to the new company, Albert Aronesty and Sam Sutton." Invoice was made out to "Albert Aronesty and/or Samuel T. Sutton, c/o Belfast Imports," with the notation "ordered on November 21, 1950, by Albert." This apparently refers to an order previously made by Belfast on this date which had not been fully delivered due to declination of credit. The second invoice recites the merchandise was sold to "Sam Sutton and Albert Aronesty." Bernstein testified to the alleged fraudulent misrepresentation by Aronesty, as stated in the petition for reclamation. Aronesty denied that he had made any such statements and in fact denied any conversation as testified by Bernstein. As to how he, Aronesty, got possession of the merchandise, the witness replied, "it is a mystery to me, I don't know how I got the goods." As to the second shipment, he testified Bernstein refused credit to Belfast and stated, "I would like to bill this to Sam Sutton and yourself, personally, I don't like Belfast Imports * * * I agreed to that, I signed the confirmation that way, I said, 'I have no objection.'" Bernstein testified specifically that he extended credit "to the firm of Sam Sutton and Albert Aronesty." It is apparent from the testimony presented at this hearing that the issue chiefly contested was the conditions and representations under which the merchandise was sold to Sutton and Aronesty and whether the representation was made that these persons constituted a new company. No effort was made to establish the allegations of the petition for reclamation that these two individuals, or either of them, were acting in behalf of Belfast. In his order denying the petition

1. 11 U.S.C.A. § 701 et seq.

for reclamation, the referee declared the evidence to show "that the petitioner sold some merchandise to Sam Sutton and Albert Aronesty, or to a new company to be formed by these two men. The petitioner denies that it sold any goods to Belfast Imports, Inc." In the absence of any privity of contract between petitioner and the debtor, the referee was of the opinion that the Silver Company's claim, if any, was against these two parties or such new company, and the denial of the petition for reclamation was expressly without prejudice to any of the rights of petitioner against these parties. Upon petition for review, the district judge, while rejecting the implication of the referee's order that privity of contract was necessary to sustain the reclamation proceedings, held that since it appeared that title to the goods passed to Aronesty and Sutton, the referee was right in ordering that the petitioner should pursue its remedy against them. Thereafter, by its present counsel, petitioner moved for a rehearing for the purpose of the introduction of additional testimony. The motion was granted, and testimony corroborating that formerly given that the sales were made to "Sam Sutton and Albert Aronesty, a new company" and that no credit was extended to Belfast, was presented. There was further testimony that the Silver Company had at one time required a personal guarantee of the Belfast accounts by Aronesty and Sutton; that this guarantee had been withdrawn. Sutton testified that no new company was formed and that he never regarded himself as the owner of the merchandise. Aronesty testified that he had never regarded himself as the owner of the goods in question. He testified that he had never personally guaranteed the Belfast account, and further denied that he ever told Bernstein it was agreeable to bill the goods to Aronesty and Sutton. As to "whom it was supposed to be billed to," he replied, "as far as I know it is Belfast Imports goods, it is Belfast goods, not my goods; I never understood it to be billed to me or Mr. Sutton unless Sam Sutton had some conversation with him that I don't know of." Upon the motion for rehearing, the referee stated his appraisal of the evidence [2] and again denied the petition without prejudice to any rights petitioner might have against Aronesty and Sutton or any other company formed by them. The district judge sustained the referee's findings and this appeal follows.

It is insisted that the court erred in its determination that the reclamation petition was not an appropriate means to re-claim the merchandise, and in remitting the petitioner to its rights against Sutton and Aronesty; that the court should have found that title to the merchandise did not pass from appellant to Sutton and Aronesty, individually, to a new company, or to anyone else, and should have ordered the return of the merchandise to appellant.

In the state of the evidence in this case, we think the district judge was fully authorized to accept the ultimate conclusion of the referee that the petitioner had failed to show its right to re-claim the merchandise in question from Belfast Imports, Inc. Upon the petitioner for reclamation rested the burden of proving that it had, as against Belfast, a superior title and right to possession of the goods in question. Implicit in the finding of the referee is his rejection of the claims that the possession of the goods was obtained by fraudulent misrepresentations of Aronesty and Sutton, whether they acted to procure the sale of the goods to themselves, individually, to a new company to be by them formed, or on

2. "All the testimony and all the facts and the record in the cause show that on April 21, National Silver Company sold some merchandise to Samuel Sutton and Albert Aronesty. The invoices are made out to these two men personally. The testimony shows that the Petitioner would not have sold any merchandise to the Debtor Bankrupt. Sutton and Aronesty are not in bankruptcy. The record does not show how the goods passed from Sutton and Aronesty to the Bankrupt, assuming that they did pass, or what the arrangement was between these two men and the Bankrupt.

"The Referee is still of the opinion, as he was on September 27, 1951, that the rights and remedies of the National Silver Company are of necessity against Samuel Sutton and Albert Aronesty, individually, who are not parties to these proceedings."

behalf of Belfast. In view of the nature of the testimony as a whole the referee was not required to credit the testimony on behalf of the petitioner for reclamation that fraudulent misrepresentations were made to induce the sale to Sutton and Aronesty, or all of the latters' testimony that they had made no representation, or their denial that they bought the goods personally and assumed personal liability therefor, or their self exculpatory statements that they claimed no personal interest in the goods. Following the insolvency of Belfast, these individuals had interest which conflicted with the rights of the creditors of this firm, and its property should be divested only upon clear proof. It was the duty of the referee to weigh the conflicting statements in the evidence and find the facts. He could properly give great weight to the written invoices of the seller, made at the time the merchandise was delivered, which show a sale and delivery to the individuals. The evidence is sufficient to support the express finding of the referee that credit was extended, and the goods sold, to Aronesty and Sutton, or a new company to be formed by them, and the implied one that there was no fraud which prevented title passing to such purchaser. Consequently, whether it parted with title to others than the bankrupt, or sold to the bankrupt on the personal credit of others, appellant is in the position of any seller of goods under such circumstances who thereafter may seek to recover possession of them from a bankrupt. In such a case in order to successfully maintain a petition for reclamation, the petitioner has the burden of adducing facts sufficient to establish that its claim to possession is superior to the *prima facie* right of the trustee. In this case the testimony in the record does not require a finding that the petitioner for reclamation carried this burden. We apprehend that this is the effect of the holding of the referee, confirmed by the district judge, that there was no privity of contract between the seller and the bankrupt. Of course such privity is not an essential to the maintenance of a petition for reclamation, though its absence may well make it more difficult for the seller to show that he is entitled to re-claim possession of the goods.

No reversible error is made to appear. The judgment is

Affirmed.